IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CONSTEEL ERECTORS, INC., | ) | 4:08CV3038 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| SCHARPF'S CONSTRUCTION, INC.; | ) | |
| KRAUS-ANDERSON | ) | |
| CONSTRUCTION COMPANY; | ) | |
| JAMES SCHARPF; JASON RUSNAK; | ) | |
| MENARDS, INC.; and TRAVELERS | ) | |
| CASUALTY AND SURETY | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

This action was commenced on January 31, 2008, in the District Court of Douglas County, Nebraska, and was removed to this court on February 29, 2008, by four of the defendants, Kraus-Anderson Construction Company ("Kraus-Anderson"), Jason Rusnak ("Rusnak"), Menards, Inc. ("Menards"),[1] and Travelers Casualty and Surety Company of America (Travelers"), on the basis of diversity of citizenship. The other two defendants, Scharpf's Construction, Inc. ("Scharpf's Construction"), and James Scharpf, have failed to plead or otherwise defend, and are in default.

The plaintiff, ConSteel Erectors, Inc. ("ConSteel"), seeks to obtain a default judgment against Scharpf's Construction and James Scharpf "in the amount of $285,138.44 plus pre-judgment interest of $12,280.48 through April 15, 2008, with

---

[1] It appears from the notice of removal and subsequent filings that Menards' actual corporate name is Menard, Inc.

a per diem of $93.75 thereafter and costs of $97.00." (Filing 21, Amended Motion for Default Judgment,[2] at CM/ECF p.2.)  On initial review of ConSteel's motion, I questioned whether the pleadings showed that (1) Scharpf's Construction is liable for more than an unpaid contract amount of $240,000, (2) James Scharpf is individually liable for the corporation's debt, and (3) ConSteel is entitled to prejudgment interest as claimed.  I therefore directed ConSteel to file a brief and affidavits in support of its motion, specifically addressing these three questions, and scheduled a Rule 55(b) hearing.[3]  *See* Memorandum and Order entered July 1, 2008 (filing 35).

---

[2] A previously filed motion for default judgment was denied by Magistrate Judge Piester because there was no evidence that either Scharpf's Construction or James Scharpf had been served with summons.  *See* Memorandum and Order entered May 8, 2008 (filing 20).  The amended motion was immediately filed with copies of summonses and returns of service attached.  The amended motion was also reviewed by Judge Piester, who noted sua sponte that there was an issue  whether the court had subject matter jurisdiction since the notice of removal had not been signed by the defaulting defendants and there was no other written consent on record; the parties were then directed to file briefs and evidence regarding this jurisdictional issue.  *See* Memorandum and Order entered June 2, 2008 (filing 27).  Shortly thereafter, Chief Judge Bataillon reassigned the case to me for disposition.  *See* Reassignment Order entered June 11, 2008 (filing 28).  I made a determination that subject matter jurisdiction exists based on an affidavit provided by James Scharpf, personally and as the president and an owner of Scharpf's Construction (filing 30-2), stating that he and the corporation consented to the removal.  *See* Memorandum and Order entered July 1, 2008 (filing 35, at CM/ECF p.1, n. 1).  In any event, failure to obtain consent to the removal from all defendants should not be considered a jurisdictional defect.  *See Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453, 455 (7th Cir. 2005).

[3] When a party has failed to plead or otherwise defend against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b).  *See Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998).  A default was entered by the clerk on July 10, 2008 (filing 40).  Rule 55(b) provides in part that "[t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed.R.Civ.P. 55(b)(2).  The need for a hearing is

As directed, ConSteel filed a pre-hearing brief (filing 44) and an evidence index (filing 45). The non-defaulting defendants also filed a pre-hearing brief (filing 48) and an evidence index (filing 49), as to which ConSteel filed a motion to strike and objections (filing 50). After hearing the parties, I authorized additional briefing on (1) the motion to strike and objections, (2) whether further consideration of the default judgment motion should be stayed pending disposition of all claims, and (3) any other matter the parties might care to raise. *See* Memorandum and Order entered August 20, 2008 (filing 53). Such briefing has now been completed. Subsequent to the hearing, Kraus-Anderson and Menards filed a motion for the entry of a consent judgment (filing 54) on their cross-claims against Scharpf's Construction.

Upon careful consideration, I find and conclude that: (1) ConSteel's motion to strike evidence should be granted because the non-defaulting defendants do not have standing to defend claims filed against the defaulting defendants. (2) ConSteel is entitled to a default judgment against Scharpf's Construction and James Scharpf in the amount of $285,138.44, plus 12% interest since December 6, 2007, but there is just reason to delay entry of a final judgment until all pending claims have been decided.[4] (3) Kraus-Anderson's and Menards' motion for consent judgment should be denied, without prejudice to their ability to file a motion for default judgment against Scharpf's Construction.

-----

within the sound discretion of the district court. *See Stephenson v. El-Batrawi*, 524 F.3d 907, 915-16 (8th Cir. 2008).

[4] "When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed.R.Civ.P. 54(b).

### *ConSteel's Motion to Strike*

The brief that the non-defaulting defendants filed in opposition to ConSteel's amended motion for default judgment is written as if the court had converted the motion into one for summary judgment. This is incorrect. The court's Memorandum and Order entered July 1, 2008, specified that "the defendant's motion will be treated as a Rule 55(b)(2) motion for entry of a default judgment by the court," although, due to a typographical error, the order further stated that a hearing would be conducted "[p]ursuant to Federal Rule of Civil Procedure 56(b), . . . for the purpose of receiving evidence to determine the truth of the averments of the plaintiff's complaint and the amount of damages and prejudgment interest, if any." (Filing 35, at CM/ECF p. 2.) Obviously, the court intended to reference Rule 55(b) again.[5]

ConSteel makes several arguments as to why the non-defaulting defendants should not be allowed to present any evidence in opposition to its amended motion for default judgment, including that (1) they lack standing to defend claims brought against the defaulting defendants, (2) they waived any right to contest the motion by failing to object prior to the clerk's entry of default, and (3) they are estopped from contesting the motion because they have moved for the entry of a consent judgment against Scharpf's Construction. Kraus-Anderson and Menards respond that (1) they have standing to present evidence because they have asserted counterclaims against ConSteel based on a June 11, 2008 assignment from Scharpf's Construction and (2) their brief and evidence were submitted in response to the court's order scheduling the Rule 55(b) hearing.

I find no merit to ConSteel's second and third arguments, but agree as a general proposition that non-defaulting defendants do not have standing to present evidence

---

[5] Rule 56(b) clearly has no application here. It provides that "[a] party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed.R.Civ.P. 56(b).

in connection with a Rule 55(b) hearing.  As will be discussed in the next section, I also conclude that Scharpf's Construction's assignment of claims to Kraus-Anderson and Menards did not confer such standing.  Consequently, ConSteel's motion to strike will be granted without prejudice to the non-defaulting defendants' right to introduce any evidence at trial or in relation to any motion directly involving a claim made by or against them.  I make no ruling on ConSteel's objections to the evidence.

### ConSteel's Amended Motion for Default Judgment

"[W]hen it seems advantageous, a court may conduct a hearing to determine whether to enter a judgment by default.  The hearing is not considered a trial, but is in the nature of an inquiry before the judge."  10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (Westlaw 2008) (footnotes omitted).  "If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. Moreover, it may not be necessary to present testimony to obtain a judgment on the liability issue, although liability is not deemed established simply because of the default and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability." *Id.* (footnotes omitted). "Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief.  Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* (footnotes omitted). *Cf. Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (plaintiff's assumption "that a default judgment conclusively establishes liability, as opposed to establishing the *fact* allegations in the complaint," was "debatable proposition") (emphasis in original). *See also Taylor v. City of Ballwin*, 859 F.2d 1330, 1333 n.7 (8th Cir. 1988) (once default is entered, defaulting defendant has no further standing to contest factual allegations of plaintiff's claim).

"An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Fed.R.Civ.P. 8(b)(6). While the clerk's entry of default against Scharpf's Construction and James Scharpf prevents those two defendants from disputing ConSteel's fact allegations not related to the amount of damages, the non-defaulting defendants are free to dispute any and all of ConSteel's allegations. In fact, it is a "venerable principle that a default judgment against one defendant does not preclude a codefendant from contesting the plaintiff's claim." Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co., 978 F.2d 430, 432-33 (8th Cir. 1992) (citing The Mary,13 U.S. (9 Cranch ) 126, 143 (1815) ("In the same cause, a fact, not controverted by one party, who does not appear, and therefore, as to him taken for confessed, ought not, on that implied admission, to be brought to bear upon another who does appear, does controvert, and does disprove it.")).

In Frow v. De La Vega, 82 U.S. (15 Wall.) 552 (1872), "the Supreme Court held that when defendants are sued as jointly liable, and less than all default, the court may not enter default judgment against the defaulted defendants until the liability of the nondefaulted defendants has been decided." McMillian/McMillian, Inc. v. Monticello Ins. Co., 116 F.3d 319, 321 (8th Cir. 1997). "When co-defendants are similarly situated, inconsistent judgments will result if one defendant defends and prevails on the merits and the other suffers a default judgment." Angelo Iafrate Const., LLC v. Potashnick Const., Inc., 370 F.3d 715, 722 (8th Cir. 2004) (citing Frow, 82 U.S. at 554).[6] "To avoid such inconsistent results, a judgment on the merits for the answering party should accrue to the benefit of the defaulting party." Id.

---

[6] "Parties are not similarly situated and a default judgment does not establish inconsistent judgments, however, if the liability of the defaulting party is based on independent wrongful acts or a legal theory distinct from the one under which the answering party prevailed." Potashnick, 370 F.3d at 722.

The Eighth Circuit has also stated that "[w]hen there are multiple defendants who may be jointly and severally liable for damages alleged by plaintiff, and some but less than all of those defendants default, the better practice is for the district court to stay its determination of damages against the defaulters until plaintiff's claim against the nondefaulters is resolved. This is not because the nondefaulters would be bound by the damage determination against the defaulters, but to avoid the problems of dealing with inconsistent damage determinations against jointly and severally liable defendants." *Pfanenstiel*, 978 F.2d at 433 (citing *In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1261-62 (7th Cir. 1980)).

Based on the foregoing precedent, I conclude that it would be error to enter a final judgment at this time in favor of ConSteel and against Scharpf's Construction and James Scharpf. Apart from the problem of potentially inconsistent liability or damage determinations, entry of a final judgment could preclude action on an alleged assignment of claims from Scharpf's Construction to Kraus-Anderson and Menards on June 11, 2008.[7] Kraus-Anderson and Menards allege that ConSteel breached its subcontract with Scharpf's Construction by failing to complete its work, and also that it contracted to indemnify Scharpf's Construction. As assignees, they seek to recover damages of at least $301,961.08 for ConSteel's alleged breach of contract, plus indemnification for claims made by construction lien holders. A final judgment in favor of ConSteel and against Scharpf's Construction for breach of contract most likely would bar any action on the assigned breach-of-contract claim.[8] *See Kapp v.*

---

[7] The assignment was first alleged in amended counterclaims filed on June 20, 2008 (filing 33). Although this pleading was filed without leave of court, *see* Fed.R.Civ.P. 15(a)(2), ConSteel answered (filing 34) without first moving to strike.

[8] The indemnification counterclaim is worthless, however, since the contract provision that Kraus-Anderson and Menards are relying upon is clearly limited by its terms to indemnification for losses "caused in whole or in part by any negligent act or omission of [ConSteel] . . . and attributed to bodily injury, sickness, disease or death, mold growth, or to injury to or destruction of property . . .." (Filing 1, at CM/ECF p. 30, ¶ 7.2.) It does not insure against the filing of construction liens.

*Naturelle, Inc.*, 611 F.2d 703, 707 (8th Cir. 1979) ("[E]ven a default judgment operates as res judicata and is conclusive of whatever is essential to support the judgment."); *Mabile v. Drivers Management, Inc.*, 660 N.W.2d 537, 543 (Neb.App. 2003) (res judicata bars relitigation of any right, fact, or matter directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions; default judgments are generally considered to be on the merits for purposes of res judicata).

ConSteel argues that the entry of a default against Scharpf's Construction is sufficient to preclude action on the assigned counterclaims. I disagree. As discussed above, the entry of a default is not a finding of liability and it has no res judicata (claim preclusion) effect. Until such time as a final judgment is entered, collateral estoppel (issue preclusion) also does not apply.[9]  *See Amanda C. ex rel. Richmond v. Case*, 749 N.W.2d 429, 437 (Neb. 2008) ("Collateral estoppel is applicable where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a judgment on the merits which was final, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action."). The default does have <u>evidentiary</u> effect, however, since "the assignee of . . . a claim stands in the shoes of the assignor and accepts it subject to all available defenses." *Johnson v. Riecken*, 173 N.W.2d 511, 516 (Neb. 1970) (admissions in assignor's pleadings were admissible against assignee with respect to assigned claim). Thus, to prevail on their assigned counterclaim for breach of contract, Kraus-Anderson and Menards will need to overcome Scharpf's Construction's admission that ConSteel

---

[9] Indeed, it is generally held that collateral estoppel does not apply even after a judgment by default is entered because no issue of fact or law was actually litigated. *See Arizona v. California*, 530 U.S. 392, 414 (2000) (citing Restatement (Second) of Judgments §27, p. 250 (1982)).

substantially performed the subcontract.[10]  They cannot eliminate this obstacle by presenting evidence at the Rule 55(b) hearing that ConSteel failed to perform the subcontract, since Scharpf's Construction would still be in default and its implied admission of all factual allegations of the complaint would continue.  In short, the assignment of claims does not provide Kraus-Anderson and Menards any standing to defend claims made against ConSteel.  I now turn to the three substantive issues that were to be addressed by ConSteel at the Rule 55(b) hearing.

The first question presented was whether Scharpf's Construction is liable for extra services and equipment that were invoiced directly to Kraus-Anderson, in the amount of $45,138.44. ConSteel's general manager states in an affidavit that these extra services and equipment were provided at the request of Scharpf's Construction and James Scharpf, and that they agreed to pay for the same.  (Filing 45, at CM/ECF p. 4, ¶¶ 7, 8.)  Although the subcontract required written change orders and warned that ConSteel would proceed at its own risk and expense if it performed additional work (filing 45 at CM/ECF p. 8, ¶ 4.1), the Nebraska Supreme Court has held that "where the parties ignore provisions in a written contract requiring change orders to be in writing, it will not furnish a defense to a claim for compensation for the additional work performed." *Shreves v. D. R. Anderson Constructors, Inc.*, 293 N.W.2d 106, 110 (Neb. 1980) (citing *D. K. Meyer Corp. v. Bevco, Inc.*, 292 N.W.2d 773 (Neb. 1980)).  On the evidence presented, I find that ConSteel is entitled to the entry of a default judgment against Scharpf's Construction for the unpaid contract amount of $240,000.00,[11] plus $45,138.44 for extra services and equipment.

---

[10] "Whether a contractor substantially complies with a building contract is generally a question of fact." *Smith v. Smith*, 112 S.W.3d 275, 279 (Tex.App. 2003). *See also Rosebud Sioux Tribe v. A & P Steel, Inc.*, 874 F.2d 550, 554 (8th Cir. 1989) (applying South Dakota law).

[11] Even though ConSteel has only alleged substantial performance of the subcontract, the burden is on Scharpf's Construction to prove that ConSteel is not entitled to recover the full amount of the unpaid contract price. *See Nathan Const. Co. v. Fenestra, Inc.*, 409 F.2d 134, 140-41 (8th Cir. 1969); *Rickertsen v. Carskadon*,

The second question presented was whether James Scharpf is personally liable for the corporation's indebtedness. In its complaint, ConSteel alleges that "James Scharpf is personally liable to ConSteel since, upon information and belief, he is the alter ego of Scharpf's, failed to adequately capitalize Scharpf's, has used Scharpf's for unlawful purposes, to perpetrate a fraud and avoid obligations to creditors including ConSteel, and misappropriated and diverted assets of Scharpf's for his own personal benefit and to the detriment of ConSteel and other creditors." (Filing 1, at CM/ECF p. 8, ¶ 27.) The allegation that James Scharpf is the alter ego of Scharpf's Construction is merely a legal conclusion. I conclude, however, that the remaining allegations are marginally sufficient to satisfy the federal pleading requirement that the circumstances constituting fraud be pleaded with particularity. *See* Fed.R.Civ.P. 9(c). "Among the factors which are relevant in determining to disregard the corporate entity on the basis of fraud are (1) grossly inadequate capitalization; (2) insolvency of the debtor corporation at the time the debt is incurred; (3) diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses; and (4) the fact that the corporation is a mere facade for the personal dealings of the shareholder and that the operations of the corporation are carried on by the shareholder in disregard of the corporate entity. These are not acts of fraud in themselves but, rather, are elements of circumstantial proof of fraud." *Victory Lake Marine, Inc. v. Velduis*, 621 N.W.2d 306, 312 (Neb.App. 2000) (quoting *Southern Lumber & Coal v. M.P. Olson Real Estate*, 426 N.W.2d 504, 509 (Neb. 1988)). I therefore find that James Scharpf, by failing to deny these factual allegations, is liable for the full amount owed to ConSteel by Scharpf's Construction.[12]

---

108 N.W.2d 392, 396 (Neb. 1961) ("If the plaintiff has substantially performed his contract he is entitled to the contract price, less any damage proved by the defendant to be occasioned by less than complete performance.").

[12] ConSteel has also presented evidence that James Scharpf personally guaranteed payment of the amount claimed, but the complaint does not contain any allegations to this effect, nor does it appear that James Scharpf was served with copies of ConSteel's brief and evidence. I will not enter a default judgment against James Scharpf as a payment guarantor.

The final question presented at the Rule 55(b) hearing was whether ConSteel is entitled to prejudgment interest.  Under Nebraska law, "prejudgment interest is recoverable only when the claim is liquidated, that is, when there is no reasonable controversy as to the plaintiff's right to recover and the amount of such recovery." *Archbold v. Reifenrath*, 744 N.W.2d 701, 709 (Neb. 2008).  The prejudgment interest accrues from the date the cause of action arose, *see* Neb. Rev. Stat.  § 45-103.02(2) (Westlaw 2008),  at the rate of 12 percent per annum, *see* Neb. Rev. Stat. § 45-104 (Westlaw 2008).  Although it appears that the breach of contract occurred earlier, ConSteel has only calculated prejudgment interest from December 6, 2007, when it presented a settlement offer to Scharpf's Construction.[13]  I will accept ConSteel's calculation and award only the amount of prejudgment interest requested.

### Kraus-Anderson's and Menards' Motion for Consent Judgment

On September 2, 2008, Kraus-Anderson and Menards filed a joint motion for entry of a consent judgment against Scharpf's Construction.  This filing, which is also signed by James Scharpf, as president of Scharpf's Construction, states that the parties have agreed to resolve claims among themselves, as follows:

---

[13] Nebraska law also permits an award of prejudgment interest on unliquidated claims where the plaintiff has previously offered to settle for less than the judgment amount, *see* Neb. Rev. Stat. § 45-103.02(1), but the applicable interest rate is "two percentage points above the bond investment yield, as published by the Secretary of the Treasury of the United States, of the average accepted auction price for the first auction of each annual quarter of the twenty-six-week United States Treasury bills in effect on the date of entry of the judgment." Neb. Rev. Stat. § 45-103 (Westlaw 2008).  In the event that Scharpf's Construction and James Scharpf become entitled to a reduction in the principal amount of the judgment against them, based on the outcome of ConSteel's action against the other defendants, then the prejudgment interest component will also need to be adjusted because ConSteel's claim must be considered unliquidated.  Also, if the amount of the judgment is reduced below ConSteel's settlement offer of $250,000.00, no prejudgment interest will be allowed.

a.    A judgment shall be entered in favor of Menards and against Scharpf's Construction in the amount of $307,897.56.

b.    A judgment shall be further entered in favor of Menards and against Scharpf's Construction in an amount equal to the damages, if any, that ConSteel is deemed entitled to or is awarded against Menards.

c.    A judgment shall be entered in favor of Kraus-Anderson and against Scharpf's Construction in the amount of $465,783.94.

d.    A judgment shall be further entered in favor of Kraus-Anderson and against Scharpf's Construction in an amount equal to the costs and attorneys fees expended by Kraus-Anderson in this lawsuit.

e.    A judgment shall be further entered in favor of Kraus-Anderson and against Scharpf's Construction in an amount equal to the damages, if any, that ConSteel is deemed entitled to or is awarded against Kraus-Anderson.

(Filing 54, at CM/ECF p. 2.)

I will not enter a judgment by consent against a party who has not entered an appearance in the action.[14]   The proper procedure, of course, is to file a motion for the entry of a default judgment, which Kraus-Anderson and Menards can still do.

IT IS ORDERED that:

1.    ConSteel's motion to strike (filing 50) is granted, and the non-defaulting defendants' index of evidence (filing 49) is stricken from the record.

_____

[14] Although the motion is signed by James Scharpf as president of Scharpf's Construction, the law does not allow a corporation to proceed pro se. *See Ackra Direct Marketing Corp. v. Fingerhut Corp., 86 F.3d 852, 857 (8th Cir. 1996)*.

2.      ConSteel's amended motion for default judgment (filing 21) is granted, and, at the conclusion of the case, judgment shall be entered in favor of ConSteel and against Scharpf's Construction and James Scharpf in the amount of $285,138.44, plus 12% interest since December 6, 2007.

3.      Kraus-Anderson's and Menards' joint motion for entry of a consent judgment (filing 54) is denied.

October 9, 2008.                      BY THE COURT:

                                      s/Richard G. Kopf
                                      United States District Judge

-13-